UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Air Transport Association of America, Inc. d/b/a Airlines for America, | Court File No. 24-cv-4657 (JWB/ECW) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| Nicole Blissenbach, in her official capacity as Commissioner of the Department of Labor and Industry, | |
| Defendant. | |

## INTRODUCTION

Plaintiff's ten member airlines already allow employees to accrue and use sick leave. In this lawsuit, they argue that they are entitled to limit the accrual of sick leave and circumstances under which employees may use it, in contravention of state law. They argue, as applied to airlines, the challenged law is preempted by the Airline Deregulation Act and the Railway Labor Act. They are wrong on both counts. Neither federal statute permits the airlines to thumb their noses at generally applicable background employment laws. The Court should grant the motion to dismiss.

## FACTS[1]

The Minnesota Earned Sick and Safe Time Law (Minn. Stat. §§ 181.9445-48) ("the Minnesota Law") governs the accrual and use of earned sick and safe time (ESST) for

---

[1] For purposes of the motion to dismiss only, this motion treats as true all well-pleaded facts in the Complaint. *See Brown v. Medtronic, Inc*., 628 F.3d 451, 459 (8th Cir. 2010).

employees who work in the state of Minnesota. *See* Minn. Stat. §181.9445. It also prohibits retaliation. *Id.*, 181.9447, subd. 6.

ESST means leave, including paid time off and other paid leave systems, that is paid at the same base rate as an employee earns from employment that may be used for the same purposes and under the same conditions as provided under section 181.9447, for example for the employee's physical illness or medical treatment. *See* Minn. Stat. § 181.9445, subd. 4.

The Minnesota Law applies to employers who have "one or more employees." *See* Minn. Stat. § 181.9445, subd. 6. "Employee," in turn, is defined as "any person who is employed by an employer, including temporary and part-time employees, who is anticipated by the employer to perform work for at least 80 hours in a year for that employer in Minnesota." *See* Minn. Stat. § 181.9445, subd. 5.[2]

The Minnesota Law prescribes that employers in Minnesota must allow covered employees to accrue one hour of ESST for every 30 hours worked, up to 48 hours in a year, "unless the Employer agrees to a higher amount." *See* Minn. Stat. § 181.9446(a). It also identifies when an employee may use ESST, including for example an employee's own physical illness, to care for a family member with a physical illness, or an "employee's need to care for a family member whose school or place of care has been closed due to weather or other public emergency." Minn. Stat. § 181.9447, subd. 1. Employers may require notice of the need for use of ESST within seven days if the need for use is

---

[2] The Minnesota Law excludes just three categories of employees from its definition, none of which is relevant here. *See* Minn. Stat. § 181.9445, subd. 5.

foreseeable and as soon as possible if unforeseeable. *See* Minn. Stat. 181.9447, subd. 2. And an employer may not count the use of ESST against an employee under an absence control policy or attendance point system. Minn. Stat. § 181.9447, subd. 6(b).

Employers have the freedom to adopt or retain ESST polices that meet, exceed or do not otherwise conflict with the minimum standards and requirements provided in the Minnesota law. *See* Minn. Stat. §181.9448 subd. 1. Employers may deny employees ESST that accrues beyond 48 hours in a year. *See* Minn. Stat. 181.9446.

The Minnesota Law allows both employers and employees to agree through a collective bargaining process to waive the documentation limitations when employers provide leave policies that are more generous than the minimum required by the Minnesota Law. *See* Minn. Stat. § 181.9448, subd. 1(g). "Nothing in sections 181.9445 to 181.9448 shall be construed or applied so as to create any power or duty in conflict with federal law." Minn. Stat. § 181.9448, subd. 1(d).

The Minnesota Law went into effect on January 1, 2024. 2023 Minn. Laws ch. 53, art. 12. When initially passed, certain airline employees—flight deck and cabin crew members—were excluded from the definition of employee, but that exclusion was removed effective May 25, 2024. 2024 Minn. Laws, ch. 127, art. 11, § 7.

Plaintiff represents ten federally regulated air carriers, which include seven passenger carriers, Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co., and United Airlines, Inc., and three cargo carriers, Atlas Air, Inc., FedEx Express, and UPS Airlines.

(Compl. ¶ 7.) As of October 2024, Plaintiff's airlines employed approximately 907,882 people across the United States.[3]

Plaintiff brought this lawsuit on December 31, 2024. (Compl.) It alleges the Minnesota Law is preempted by two federal laws: The Airline Deregulation Act and the Railway Labor Act.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim must be granted where the complaint does not allege "enough facts to state a claim to relief that is plausible on its face" rather than merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, although courts must accept a plaintiff's specific factual allegations, they need not blindly accept conclusory allegations of law and unwarranted inferences. *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not, however, blindly accept the legal conclusions drawn by the pleader from the facts."). Detailed factual allegations are not necessary, but it is not sufficient to make bare assertions that are "'devoid of further factual enhancement.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (per curiam) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

---

[3] Bureau of Transportation Statistics, U.S. Dep't of Transp., https://transtats.bts.gov/Employment/ (last visited January 21, 2025).

**ARGUMENT**

**I.    THE ADA DOES NOT PREEMPT THE MINNESOTA LAW.**

In the backdrop of extensive federal regulation of airlines, Congress passed the Airline Deregulation Act (ADA) to "deregulate" the industry and create maximum reliance on competitive forces. To prevent states from circumventing deregulation, the ADA includes an express preemption provision. That preemption provision does not refer to employment laws whatsoever, and no United States Supreme Court case suggests that the ADA preempts a generally applicable background employment law like the Minnesota Law. In fact, the Court has opined that general employment laws are not preempted. Further, the only federal appellate court to analyze whether the ADA preempts state sick time laws like the Minnesota Law concluded that such laws are not preempted. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261, 1265-66 (9th Cir. 1998), *opinion amended on denial of reh'g*, 169 F.3d 594 (9th Cir. 1999). This Court should adopt that reasoning.

**A.    ADA Background & Preemption Provision.**

Whether federal law preempts state law is an issue of statutory intent, which "begin[s] with the language employed by Congress." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (citation and quotation marks omitted).[4]

Before 1978, the Civil Aeronautics Board had authority to "regulate interstate airfares and to take administrative action against certain deceptive trade practices." *Morales*, 504 U.S. at 378 (citing the Federal Aviation Act of 1958 (FAA), 72 Stat. 731, as amended, 49 U.S.C. § 1301 *et seq.*). At the time, the FAA did not preempt state law but

---

[4] As to the ADA, Plaintiff argues express preemption only. (Compl. ¶ 89.)

instead contained a savings clause: "Nothing . . . in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506.[5] States were able to regulate intrastate airfares and enforce state laws against deceptive trade practices. *Morales*, 504 U.S. at 378.

In 1978, Congress enacted the ADA, 49 U.S.C. §§ 1302(a)(4), 1302(a)(9), having concluded that "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality ... of air transportation services," *Morales*, 504 U.S. at 378. The purpose of the preemption clause is to prevent states from "undo[ing] federal deregulation with regulation of their own." *Id.* at 378. The ADA contains an express preemption provision: A state

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier

49 U.S.C. § 41713.[6] The savings clause remains. *See supra* n.5.

Here, Plaintiff argues the ADA preempts the Minnesota Law because the Minnesota Law "relate[s] to a price, route, or service of an air carrier." (Compl. ¶¶ 3, 5, 62-82.) But they largely identify only the alleged impact on *services*. (*See, e.g.*, Compl. ¶ 92

---

[5] Congress has since amended the savings clause to read that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). This revision was not substantive. *See* Pub. L. 103-272, 108 Stat. 745, 1118 (1994) (revising title 49 of the United States Code "without substantive change").

[6] When *Morales* was decided, the ADA preemption provision employed the phrase "rates, routes, or services." 504 U.S. at 378-79 (citing 49 U.S.C. § 1305(a)(1)). The revision was not intended to be substantive. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 n.1 (1995).

(identifying five allegedly significant impacts the Minnesota Law will have on airline services), ¶ 93 (alleging absences have caused or will cause airlines to change their services or change how they provide their services).)

A State law "relate[s] to a price, route, or service of an air carrier" if the State law has a connection with or references airline prices, routes, or services. *Morales,* 504 U.S. at 384. A state law may "relate" to airline prices, routes, or services, if it is *designed* to affect them, or if the effect is indirect. *Morales*, 504 U.S. at 386. "[S]tate laws whose 'effect' is 'forbidden' under federal law are those with a '*significant* impact' on carrier rates, routes, or services." *Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 375 (2008) (quoting *Morales*, 504 U.S. at 388).[7] A law relates to services when it prescribes that a company adopt a specific service. *Id.* at 372; *see also Watson,* 870 F.3d at 818 (observing that an adverse ruling on the wrongful-discharge claim would not result in a court "order[ing] the defendant air carrier to modify its safety practices").

The federal courts of appeals have adopted two competing definitions of "service." The Eighth Circuit has described the Fifth Circuit's definition as the majority rule:

> "the contractual arrangement between the airline and the user of the service," including—in the context of commercial airlines—"items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself."

*Watson*, 870 F.3d at 817 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)); *see also Tobin v. Fed. Ex. Corp.*, 775 F.3d 448, 453 (1st Cir. 2014)

---

[7] Although not an ADA case, *Rowe* is applicable to the Court's interpretation of ADA preemption. *See Watson*, 870 F.3d at 817 n.2.

(identifying this definition as the majority rule); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (same). In other words, under the broad definition of service, a state law relates to a service of an air carrier if it is designed to affect the contractual arrangement between the airline and customer, or if it has a significant impact on it—even if indirect.

The Ninth Circuit has adopted a narrower definition of "service": "such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided," *Charas*, 160 F.3d at 1265-66. The Eighth Circuit has adopted neither rule. *See Watson*, 870 F.3d at 818 (assuming for the sake of argument that the broader definition was correct). The Ninth Circuit's definition is persuasive because it is consistent with Supreme Court precedent and congressional intent. *Charas*, 160 F.3d at 1263-66. But the ADA still does not preempt the Minnesota Law even if the Court applies the broader definition.

Although the ADA preemption provision is "broad," it does not preempt all state laws that have any effect on airlines. *See Morales*, 504 U.S. at 383 (referring to the preemption phrase's words as "express[ing] a broad pre-emptive purpose"). Indeed, the Court "left room" for state actions that are "too tenuous, remote, or peripheral . . . to have pre-emptive effect." *Id.* at 390 (quoted by *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 224 (1995).).

**B.    The Supreme Court Has Never Suggested a Statute Like the Minnesota Law is Preempted.**

The only Supreme Court cases that have analyzed ADA preemption have involved how an airline markets its products or its interactions/agreements with its customers. None of those cases suggests the ADA preempts the Minnesota Law.

The Supreme Court first considered ADA preemption in *Morales*, concluding that the ADA preempted enforcement of a national attorney general association's guidelines related to fare advertising. The Court had no trouble concluding the challenged guidelines "quite obviously" related to fares, 504 U.S. at 387, as several of the guidelines specifically referred to fares, 504 U.S. at 388. Additionally, the law created an enforceable right to a particular fare if an advertisement did not include required explanations and disclaimers. *Id.* at 388. Here, the Minnesota Law does not refer to airline prices, routes, or services whatsoever. It does not refer to airlines whatsoever, and instead refers to ESST that all employers must provide to their employees.

Additionally, the Court concluded the guidelines had "the forbidden significant effect upon fares." *Morales*, 504 U.S. at 388. The Court explained that advertising has an "indispensable role in the allocation of resources." *Id.* (citation and quotation marks omitted). "The expenses involved in operating an airline flight are almost entirely fixed costs," and airlines must be able to sell as many seats as possible at higher rates. *Id.* Advertising fares has a significant impact on the fares an airline can charge, so the case "plainly [did] not present a borderline question." *Id.* at 390 (citation and quotation marks omitted).

9

Then, in *Wolens*, the Court analyzed whether the ADA preempted statutory consumer fraud claims brought by members of an airline's frequent flyer program. 513 U.S. 219. The Court had no trouble concluding on a motion to dismiss that the claim related to rates (charges in the form of mileage credits) and services (access to flights and service upgrades). *Id.* at 226.[8] In another frequent flyer case, where a person brought suit to challenge his termination from a perks program, the Court had no trouble on a motion to dismiss concluding that the claim "clearly" had a connection to rates, routes, or services." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014). There was a connection to rates because the program awarded mileage credits that a person could redeem for tickets and updates; there was a connection to services—i.e., "access to flights and to higher service categories." *Id.* In *Ginsberg*, there was a direct connection to a customer accessing services for a particular price. There is no such connection here.

In *Rowe*, Maine law forbade a licensed tobacco retailer to employ a "delivery service" unless the delivery service followed specific delivery procedures. The Court

---

[8] The remainder of *Wolens* is not instructive. It was about whether the claims (a consumer fraud claim and a breach of contract claim) fell within Congress' proscription that "*[N]o State . . . shall enact or enforce any law* . . . relating to [air carrier] rates, routes, or services." 49 U.S.C. § 1305(a)(1); *Wolens*, 513 U.S. at 226. In other words, does a state anti-fraud statute come within the ambit of the "[n]o state . . . shall enact or enforce" provision? The Court concluded yes. But, when deciding whether a breach of contract claim per se falls within the ambit of the provision, the Court concluded no, as it was a claim to effectuate a private agreement between two parties. *Wolens*, 513 U.S. at 232 & 233; *see also Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 286-88 (2014) (concluding a court applying a non-waivable covenant-of-good-faith-and-fair-dealing term to a private contract amounted to state enforcement of a "law, rule, regulation, standard, or other provision having the force and effect of law"). Here, there is no question a state law, such as The Minnesota Law, is a "law" as contemplated by the ADA's preemption provision.

observed the regulation was "less direct" than it could have been, but that "the effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." *Rowe*, 552 U.S. at 372. Here, there is no connection between the challenged sick leave practices of an airline and the marketplace.

Similarly, the *Rowe* court concluded that the "deemed to know" provision was preempted because it would require each carrier to check each shipment for certain markings and compare it against a list of proscribed shippers. 552 U.S. at 372-73. That is, the regulation would require the motor carrier to change its services. Here, there is no such connection. The airlines must change their employment practices—by ensuring accrual of a certain rate of sick leave and permission to use sick leave under certain circumstances— but that does not require an airline to change the services it provides customers. Indeed, although the law has been in effect since May 2024, there is nothing specific in the complaint about any impact of the law on any airline's practices. (*See, e.g.*, Compl. ¶¶ 92-93 (has had or will have).) Supreme Court precedent does not suggest the ADA preempts the Minnesota Law.

### C.    Background Employment Laws Such as the Minnesota Law Are Not Preempted.

The Supreme Court has not addressed whether an employment law provision is preempted by the ADA. But where it has spoken about ADA preemption of state regulation, it has suggested that generally applicable background laws like employment laws are not preempted. In *Rowe*, for example, the Court noted that the following laws are

not preempted: "state regulation that broadly prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public (e.g., a prohibition on smoking in certain public places)." 552 U.S. at 375. Likewise, state regulation that broadly prohibits certain forms of conduct and affects airlines only in their capacity as employers are not preempted.

The Eighth Circuit has twice analyzed ADA preemption in the context of employment laws. *Botz v. Omni Air Int'l*, 286 F.3d 488 (8th Cir. 2002), *overruled in part by Watson v. Air Methods Corp.*, 870 F.3d 812 (8th Cir. 2017) (en banc); *Watson*, 870 F.3d at 812.[9] In *Watson*, the Court concluded on a motion to dismiss that the ADA did not preempt a common law wrongful discharge claim involving a safety report. And the Court made expansive statements that "background employment laws [] are not expressly pre-empted by the ADA." *Watson*, 870 F.3d at 818. For example,

> Laws regulating minimum wages, worker safety, and discrimination based on race, sex, or age may affect a carrier's costs, but they generally operate at a level "one or more steps away from the moment at which the firm offers its customer a service for a particular price."

*Watson*, 870 F.3d at 818-19 (quoting *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 558 (7th Cir. 2012)). Further,

> Because ADA express pre-emption applies only when there is a "significant" impact on service, there is a general distinction between state laws that regulate "how [a] service is performed (preempted) and those that regulate how an airline behaves as an employer or proprietor (not preempted)."

*Id.* at 819 (quoting *Tobin*, 775 F.3d at 456).

---

[9] In *Botz*, the Court concluded a Minnesota statute authorizing a flight attendant to refuse to fly was preempted by the ADA. *Botz v. Omni Air Int'l*, 286 F.3d at 491-92, 494-95.

Applying *Watson* and the cases cited in *Watson*, the Minnesota Law is a background employment law that is not preempted by the ADA. *See S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.,* 697 F.3d 544, 561 (7th Cir. 2012) (bribery and racketeering claims are not preempted by the Federal Aviation Administration Authorization Act of 1994[10]); *Dilts v. Penske Logistics, LLC,* 769 F.3d 637, 647 (9th Cir. 2014) (meal and rest break laws are not preempted); *Tobin*, 775 F.3d at 452 (common law claims preempted "to the extent that those claims hinge on FedEx's admitted mislabeling and misdelivery of the package"). The Minnesota Law simply "regulate[s] how an airline behaves as an employer" and is not preempted. *Watson*, 870 F.3d at 819 (citation and quotation marks omitted).

The only appellate court to analyze whether the ADA preempts a state sick leave law concluded that it does not. Voters in Washington approved a ballot initiative that established a right to paid sick leave, accrued at a certain rate; and the law prohibited employers from penalizing employees for using the sick leave. *Air Transp. Ass'n of Am., Inc. v. Washington Dep't of Lab. & Indus.*, 859 F. App'x 181, 183 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2903 (June 20, 2022). The same Plaintiff in this case sued to invalidate the law, arguing in part that the law was preempted by the ADA. The Ninth Circuit disagreed, observing that as the law "does not regulate the airline-customer relationship or otherwise bind the airlines to a particular price, route, or service, it is not preempted by the

---

[10] Under the FAA, states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

ADA." *Id.* at 184. This was consistent with the court's previous reasonable interpretation of the word "services" in the preemption clause:

> "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed to "rates" and "routes," refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided (as in, "This airline provides service from Tucson to New York twice a day.") To interpret "service" more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does.

*Charas*, 160 F.3d at 1265–66. Meal and rest break requirements are likewise not preempted by the ADA. *Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1141 (9th Cir. 2021).[11]

In addition to the plain language interpretation of the preemption clause, the purpose of the ADA was economic deregulation. *Charas*, 160 F.3d at 1265. "Nothing in the Act itself, or its legislative history, indicates that Congress had a 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.'" *Id.* at 1265 (quoting *Morales*, 504 U.S. at 390).

Plaintiff may argue that the Minnesota Law affects its services in the same way the refusal-to-work law affected its services in *Botz.* That is wrong for at least three reasons. First, that argument ignores the expansive view the Eighth Circuit subsequently expressed in *Watson*, where it suggested that most employment laws are not preempted. 870 F.3d at 818-19.[12] Second, the refusal-to-fly in *Botz* was based on the employee's belief that she

---

[11] Several courts have concluded that the ADA does not preempt common law tort claims based on personal injuries, *see Charas*, 160 F.3d at 1266; *Hodges*, 44 F.3d at 334, or employment discrimination laws, *see Botz*, 286 F.3d at 496 n.8.

[12] The Court in *Watson* recounted how the *Botz* Court analyzed the refusal-to-fly claim, but did not reconsider it, as it had no occasion to. *Watson* did not involve a refusal-to-fly claim.

was being asked to violate the law, something that is easy to falsify. *Botz*, 286 F.3d at 495. Here, in contrast, the right to use sick leave is grounded in facts, not beliefs. Minn. Stat. § 181.9447. Third, the Minnesota law at issue in *Botz* was a unique scheme that permitted staff to refuse a work assignment, at "any place, at any time." 286 F.3d at 495. Here, there is no dispute that airline employees currently accrue and use sick leave. (*See* Compl. ¶¶ 36-37.) Airlines already have mechanisms to deal with that. The airlines may require advance notice, unless the need is unforeseeable. Minn. Stat. § 181.9447, subd. 2. And, assuming sufficient notice, the impact on the ten large airlines that are Plaintiff's members will likely be minimal compared to smaller airlines, because larger airlines employ hundreds of people. *See Botz*, 286 F.3d at 494.

If Plaintiff's view of the law was correct, Plaintiff would always prevail. The core service of an airline is transportation. Nearly everything the entire enterprise does has some indirect connection to prices and the services it provides. In its complaint, Plaintiff alleges several speculative, downstream effects on the services it provides (and in limited fashion, its prices) all based on the assumption that staffing *may not* be available because someone exercised his or her rights under the Minnesota Law with too little notice for the airline to cover. But merely alleging downstream effects of a generally applicable background employment law is insufficient. Because the Minnesota Law is "one or more steps away from the moment at which the firm offers its customer a service for a particular price," *Watson*, 870 F.3d at 818–19 (quotation marks and citation omitted), and it does not "frustrate the ADA's primary economic objectives" of promoting competition in the

industry, *id.* at 819, this Court should follow the rationale of the Ninth Circuit in *Charas* and *Bernstein* and conclude the ADA does not preempt the Minnesota Law.

## II.    THE RLA DOES NOT PREEMPT THE MINNESOTA LAW.

Plaintiff alleges that the RLA preempts the Minnesota Law because it intrudes upon the collective bargaining process and does not qualify as a minimum labor standard. Congress passed the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes" in the rail and airline industries. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The RLA establishes a mandatory arbitration mechanism to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153(i).

The RLA does not contain an express preemption provision, therefore Plaintiff's claim is one of implied preemption. With implied preemption, a state law should be sustained "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Malone v. White Motor Corp.,* 435 U.S. 497, 504 (1978). "Pre-emption of employment standards within the traditional police power of the State should not be lightly inferred." *Norris*, 512 U.S. at 252 (internal quotation omitted); *see also Terminal R.R. Ass'n of St. Louis v. Bhd. Of R.R. Trainmen*, 318 U.S. 1, 7 (1943) ("[T]he enactment by Congress of the Railway Labor Act was not a pre-emption of the field of regulating working conditions themselves[.]").

16

### A.    The Minnesota Law Does Not Frustrate the RLA's Purpose.

Plaintiff asserts that the RLA preempts the Minnesota Law because it "frustrates the congressional objectives of the RLA and interferes with the collective bargaining process[.]" (Compl. ¶ 97.) Specifically, Plaintiff alleges that the Minnesota Law imposes "a pervasive scheme of regulation . . . in derogation of the terms of CBAs," imposes conditions that were not agreed upon through collective bargaining, delegates to unions alone the ability to waive provisions of the Minnesota law, and generally expresses a preference for union representation. (*Id.*).

Plaintiff exaggerates the scope of The Minnesota Law. As discussed *supra*, the Minnesota Law provides the manner in which employees can earn and use sick and safe time in the state of Minnesota. It does not impose "a pervasive scheme of regulation" on numerous aspects of the working relationship. Other terms of employment such as work duties, schedule, pay, and medical coverage are not addressed by the Minnesota Law. Neither does the statute delegate "unfettered authority" to unions. Rather, it allows unions and employers to reach agreements waiving a few limited aspects of the statute. Specifically, Section 181.9448, subd. 1(g), allows parties to waive through a collective bargaining agreement the documentation limitations when employers provide leave policies that are more generous than the minimum required by the Minnesota Law.

Although preemption of state law may occur when a state law frustrates the purpose of the RLA, the Supreme Court has held that "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Norris*, 512 U.S. at 257. In *Norris*, the Supreme Court considered whether an airline

mechanic's claim under the Hawaii Whistleblower Protection Act was preempted by the RLA. 512 U.S. at 248. Discussing the purpose of the RLA as one focused on labor disputes in the industry, the Court found that the RLA was only intended to preempt disputes involving the "interpretation or application of existing labor agreements." *Id.* at 256. Accordingly, the proper question regarding RLA preemption is whether the state-law claims "are independent of the [applicable] CBA." *Id.* at 266. Because the whistleblower claim did not involve interpreting the CBA, the RLA did not preempt the plaintiff's state law claim.

Since *Norris*, other courts have found that state laws affecting "minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights" are independent of applicable CBAs. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 919-20 (9th Cir. 2018) (citing *Norris*, 512 U.S. at 262-63). In *Air Transp. Ass'n of Am. v. City and Cnty. of San Francisco*, Plaintiff and other airline organizations challenged a San Francisco ordinance that prohibited contractors working for the city from discriminating against its employees based on various protected classes or in the provision of employment benefits. 266 F.3d 1064, 1068 (9th Cir. 2001). Plaintiffs argued that the ordinance frustrated the purpose of the RLA, in part, because they would have to return to the collective bargaining process. *Id.* at 1077. The Court found that even though "a new state or local law will cause employers and unions to go back to the bargaining table when a current CBA does not comply with the law, [the law] is not at odds with the purpose of the RLA." *Id.* at 1078; *see also Schurke*, 898 F.3d at 916 ("That a state law cause of action is conditioned on some

18

term or condition of employment that was collectively bargained, rather than unilaterally established by the employer, does not itself create a CBA dispute."); *see also Fort Halifax Packing Co v. Coyne*, 482 U.S. 1, 20 (1987) (finding that a state law is not preempted by the National Labor Relations Act merely because it regulates a mandatory subject of bargaining).

Recently, District of Colorado dismissed Plaintiff's similar challenge to a comparable Colorado law providing for the accrual and use of sick and safe time. *Air Transport Assoc. of Am., Inc. v. Moss*, Case No. 1:23-cv-02421, 2024 WL 4369137, slip op. (D. Colo. Sept. 30, 2024). Citing *San Francisco*, the court noted that just because the law would require negotiations and a new CBA was not enough to establish preemption. *Id.* at *8. However, because the Colorado law "is a generally applicable law that sets forth minimum sick-leave requirements that affect union and nonunion employees equally," the court concluded that the RLA did not preempt the Colorado law. *Id.* at *9.

The same is true here. The Minnesota law sets generally applicable standards and applies to both union and nonunion employees. The Minnesota Law establishes the minimum baseline for accrual and use of sick and safe time and specifically states that nothing "shall be construed to discourage employers from adopting or retaining earned sick and safe time policies that meet or exceed, and do not otherwise conflict with, the minimum standards and requirements provided[.]" Minn. Stat. § 181.9448, subd. 1. It does not intrude on the bargaining and dispute resolution process that the RLA sought to protect, even though it may require parties to renegotiate CBAs that are out of compliance with the

statute. *San Francisco*, 266 F.3d at 1068. Therefore, the RLA does not preempt the Minnesota Law.

**B.    The Minnesota Law Creates a Minimum Labor Standard.**

Plaintiff further asserts that it does not provide a minimum labor standard because it requires terms that would be difficult for unions to bargain for. (Compl. ¶ 100.) However, the Supreme Court has squarely rejected this argument in *Fort Halifax*, as related to the National Labor Relations Act ("NLRA"). 482 U.S. 1. There, the plaintiff employer challenged a Maine law requiring the employer to provide a severance payment upon the closing of a plant, arguing that it was pre-empted by the NLRA. *Id.* at 3-4. The Court noted that "any state law that substantively regulates employment conditions" could be said to "give[ ] employees something for which they otherwise might have to bargain." *Id.* at 21. But absent a collective-bargaining agreement, "state common law generally permits an employer to run the work-place as it wishes," without having to bargain for that right. *Id.* Therefore, "the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption[.]" *Id.* at 21-22 (internal citations omitted).

Plaintiff also contends that the Minnesota Law does not provide a minimum standard because it allows parties to waive certain provisions through the collective bargaining process. (Compl. ¶ 99.) Again, the Supreme Court's opinion in *Fort Halifax* addresses and disposes of this argument. There, plaintiffs argued that the statute did not provide a minimum standard because it "applie[d] only in the absence of an agreement between employer and employees." *Id* at 22. The Court disagreed, finding that "[t]he fact

that parties are free to devise their own severance pay arrangements, however, strengthens the case that the statute works no intrusion on collective bargaining." *Id.* at 22. Therefore, NLRA did not preempt the severance payment. *Id.*

Like the law at issue in *Fairfax*, the Minnesota Law provides a minimum standard for all employees while permitting further bargaining and negotiations by the employer and employee where applicable. The Minnesota Law specifically provides that nothing in it "shall be construed to limit the right of parties to a collective bargaining agreement to bargain and agree with respect to earned sick and safe time policies or to diminish the obligation of an employer to comply with any contract, collective bargaining agreement *See* Minn. Stat. § 181.9448, subd. 1(b).

Plaintiff also alleges that the Minnesota Law "prohibits points-based attendance systems" and "does not apply to numerous categories of employees." (Compl. ¶¶ 100 & 101.) Both statements are inaccurate. The Minnesota Law does not "prohibit" point systems, but rather prohibits an employer from counting the use of earned sick and safe time against an employee under such a system. Minn. Stat. § 181.9447, subd. 6(b). Additionally, the Minnesota Law excludes just three categories of employees from its definition: volunteer firefighters and ambulance attendants, elected officials, and farm workers working 28 days or less per year, as well as independent contractors. Minn. Stat. § 181.9445, subd. 5. But the Minnesota Law applies to other employees in all other industries throughout the entire state. *Compare with 520 South Michigan Ave. Assoc. Ltd. v. Shannon*, 549 F.3d 1119, 1136 (7th Cir. 2008) (finding that a statute that applies to "one occupation, in one industry, in one county" is not a minimum labor standard).

21

Because the Minnesota Law is a generally applicable labor standard that does not undermine the RLA's purpose, it is not preempted by the RLA.

## CONCLUSION

For the reasons stated herein, Defendant respectfully asks that this Court grant her motion to dismiss.

Dated: January 21, 2025

KEITH ELLISON
Attorney General
State of Minnesota

s/ **Janine Kimble**

JANINE KIMBLE (#0392032)
ANNA VEIT-CARTER (#0392518)
IAN TAYLOR, JR. (# 0401548)
Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1415 (Voice)
(651) 297-7206 (TTY)
janine.kimble@ag.state.mn.us

ATTORNEYS FOR DEFENDANT

|#5975153-v3