**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Air Transport Association of America,
Inc. *d/b/a* Airlines for America,

Case No. 24-cv-04657 (JWB/ECW)

Plaintiff,

v.

**ORDER**

Nicole Blissenbach *in her official capacity*
*as Commissioner of the Department of*
*Labor and Industry*,

Defendant.

---

This case is before the Court on Plaintiff Air Transport Association of America,

Inc. d/b/a Airlines for America's ("A4A") Motion to Compel the Air Line Pilots

Association, International's ("ALPA") production of documents (Dkt. 77) ("the

Motion"). For the reasons set forth below, the Court denies the Motion and, pursuant to

Federal Rule of Civil Procedure 37(a)(5)(B), grants the protective order sought by APLA

in response to the Motion.

## I.      BACKGROUND

A4A is a nonprofit corporation that advocates on behalf of ten federally regulated

air carriers: Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc.,

Hawaiian Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co., United Airlines,

Inc., Atlas Air, Inc., FedEx Express, and UPS Airlines. (Dkt. 1 at 5.)[1] A4A brought this

---

[1]      Unless stated otherwise, references to page numbers in this Order are to the
CM/ECF pagination.

action against Nicole Blissenbach in her official capacity as Commissioner of the

Minnesota Department of Labor and Industry ("the Commissioner").  (*Id.* at 6.)  A4A

brought this action to challenge the application of the Minnesota Earned Sick and Safe

Time Law, Minn. Stat. § 181.9445 et seq. ("the Minnesota law"), to A4A's member

airlines.  (*Id.* at 1.)  The Minnesota law sets a minimum amount of sick and safe time that

employees must accrue, and governs how that time may be used.  *See* Minn. Stat.

§ 181.9445 et seq.  A4A argues that, as applied to its member airlines, the Minnesota law

is preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41701 et seq. (the

"ADA"), and the Railway Labor Act, 45 U.S.C. § 151 et seq. (the "RLA").  (Dkt. 1 at 1-

2.)

On January 21, 2025, the Commissioner filed a motion to dismiss for failure to

state a claim upon which relief can be granted.  (Dkt. 21 at 1.)  On May 14, 2025, United

States District Judge Jerry W. Blackwell held a hearing on the Motion.  (Dkt. 52.)  Judge

Blackwell denied the motion on the record.  (Dkt. 55 at 32:20-24.)[2]  Judge Blackwell

explained that:

> The plaintiff alleges that the Minnesota law intrudes upon the collective
> bargaining process by regulating employment terms already subject to
> negotiation and by applying to leave benefits beyond the statutory minimum.
>
> So at this stage, those allegations are sufficient to proceed to discovery. And
> as I have emphasized, the proof ought to be in the pudding here.  I mean, I
> will hear the arguments about what is likely to occur in the future based upon
> the statutes or policies, but I want to see kind of what the data shows already.
> And there may be grounds to have a very good argument that past ought to
> be prologue.  That if it hasn't happened, then there has to be an argument for
> why it should be credible that it's going to happen if it's not already in the

---

[2]    Transcripts are cited in page:line format.

2

history.  Since the history is, in fact, pled as a part of the complaint, then there had to have been a good-faith basis for pleading it.  So I'd like to see it.

So the case will proceed to discovery, but it won't be the discovery one-on-one so to speak.  The issue presented here is first and foremost one of preemption, and, specifically, whether the Minnesota law creates an impermissible burden on airline operations or disrupts the bargaining process under the RLA.  And so discovery will initially be limited to those questions.

So let me be clear enough that the discovery that I'll order won't be an invitation for party-by-party damages discovery or a broad inquiry into all employment practices; rather, I'm going to permit focused discovery, narrow discovery on, number one, whether the Minnesota law as applied to plaintiff's member airlines has caused or would likely cause a significant impact on airline services, prices, or routes; and then, two, whether the law imposes operational or administrative burdens inconsistent with uniform federal regulations of airlines; and then, number three, **whether it displaces or interferes with collective bargaining under the RLA**.

(*Id.* at 34:1-35:12 (emphasis added).)  Judge Blackwell further clarified that:

I'm anticipating that the plaintiff's permitted discovery would include things such as discovery limited to the operational impact on the airlines; you know, regulatory and compliance burdens, that is, documents showing the admin costs and burdens associated with tracking compliance under the Minnesota law as compared to other jurisdictions; FAA crew staffing requirements and safety compliance.  **A fourth area, the comparative analysis of state and federal regulation might be helpful to see.  An example of that would be evidence on how the Minnesota law interacts with, modifies, or contradicts federally governed airline labor relations under the RLA**. So I would be -- there may be something there that could be instructive on the issues before the Court.

(*Id.* at 36:1-15 (emphasis added).)

The case proceeded to discovery, and on August 5, 2025, A4A served a subpoena

on nonparty ALPA.  (Dkt. 79-4.)  The subpoena included eight requests for production.

(*Id.*)  The eighth request is reproduced below:

3

All DOCUMENTS and COMMUNICATIONS CONCERNING any proposals, notes, drafts, discussions, or other documents presented in collective bargaining negotiations between Delta Air Lines, Inc., including any PERSONS purporting to or acting on its behalf, and ALPA, including any PERSONS purporting to or acting on its behalf, relating to SICK LEAVE, time off, attendance, reliability, or availability of AIRLINE employees and any DOCUMENTS or COMMUNICATIONS memorializing, referencing, or in any way concerning such DOCUMENTS or COMMUNICATIONS, from the time negotiations began for the collective bargaining agreement immediately preceding the operative collective bargaining agreement through present.[3]

(*Id.* at 13.)  ALPA objected to Request 8 as follows:

ALPA objects to this request because it is overly broad and unduly burdensome. ALPA also objects to the extent that it seeks documents protected by attorney-client privilege, attorney work-product privilege, and common-interest privilege. ALPA further objects to this request because inasmuch as it calls for documents shared with Delta Airlines, Inc. ("Delta"), a constituent Airline and member of Plaintiff, it calls for information readily available to Plaintiff from Delta, which is more convenient and less burdensome than seeking these documents from ALPA (*See* Subpoena Definitions 3, 17; Subpoena Ex. 1, Compl. ¶ 7). ALPA also objects to this request as unduly burdensome to the extent that it seeks internal bargaining strategies not shared with Delta, which are subject to the labor-relations privilege, the production of which would cause irreparable injury to ALPA and outweigh any potential benefit to Plaintiff. Moreover, such an overly broad and unduly burdensome request is not proportional to the needs of the case in resolving whether the Law interferes with or displaces collective bargaining under the RLA, which is a process that involves the presentation and discussion of proposals between the respective parties. Accordingly, ALPA will not produce any documents in response to this request.

(Dkt. 79-5 at 6.)  A4A subsequently clarified that any responsive documents already within Delta's possession, such as collective bargaining proposals exchanged between

---

[3]    This time frame spans at approximately eight years.  (*See* Dkt. 85 at 19; Dkt. 85-5 ¶ 9.)

ALPA and Delta, need not be produced by ALPA in response to Request No. 8.  (Dkt. 78 at 16.)

On November 24, 2025, A4A filed the Motion to compel ALPA's response to Request No. 8.  (Dkt. 77.)  ALPA filed its opposition to the Motion on December 1, 2025, arguing that ALPA's internal bargaining strategies should be shielded from discovery under a protective order pursuant to Rule 26(c)(1).  (Dkt. 85 at 19.)  The Court held a hearing on the motion via Zoom for Government on December 8, 2025.  (Dkt. 87.)

## II.    LEGAL STANDARD

Parties may seek discovery from non-parties by serving a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 45.  "The scope of discovery for a Rule 45 subpoena is the same as the scope of discovery under Rules 34 and 26 and is subject to the same constraints on relevance and proportionality."  *In re Cattle*, No. 22-MD-3031 (JRT/JFD), 2023 WL 11984983, at *2 (D. Minn. Aug. 7, 2023) (quoting *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022)).  Pursuant to Rule 26,

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  In the context of a Rule 45 subpoena, the Federal Rules of Civil Procedure further require that:

5

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1). Rule 45 states that non-parties may object to the production of documents pursuant to a subpoena. Fed. R. Civ. P. 45(d)(2)(B). When a third party objects, the party that served the subpoena may move the court for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i). Orders compelling production are governed by Rule 37(a). If such a motion is denied:

> [T]he court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including by "forbidding the disclosure of discovery" or by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(A), (G).

## III.  ANALYSIS

A4A argues that Request No. 8 is relevant to one of its theories of RLA preemption, namely, that because the Minnesota law gives employees benefits that they

6

had been either unable or unwilling to bargain for, it disrupts the bargaining process set forth in the RLA.  (Dkt. 78 at 6-7, 13.)  A4A asserts that "Request No. 8 was designed to capture documents reflecting (i) how ALPA prioritizes sick leave provisions in the context of the give-and-take negotiation process and (ii) how the Minnesota Law (or other paid sick leave laws) impacts the negotiation process."  (*Id.* at 7.)  A4A also argues that Request No. 8 is relevant to understand "how the Minnesota law or other paid sick leave laws altered or impacted" ALPA's collective bargaining strategy with respect to sick leave.  (Dkt. 89 at 6:11-22.)

In light of Judge Blackwell's order declining to dismiss A4A's RLA preemption claim, the Court concludes as an initial matter that whether the Minnesota law gives employees benefits that they had been either unable or unwilling to bargain for is relevant to the RLA preemption claim in this case.  However, the Court notes that A4A already possesses significant information about what ALPA was willing and able to bargain for in its negotiations with Delta, given that Delta is a member of A4A and was a party to those negotiations with ALPA.  While there may be additional relevant information in ALPA's internal documents and communications, the Court must consider ALPA's argument that disclosure of this information would impose an undue burden on ALPA.

ALPA argues that Request No. 8 is unduly burdensome because "[t]he forced disclosure of a union's internal strategies to an employer is inherently destructive and destabilizing to the collective bargaining process and would irreparably harm ALPA's ability to represent its members effectively in bargaining."  (Dkt. 85 at 5.)  ALPA asks

the Court to issue a protective order pursuant to Fed. R. Civ. P. 26(c)(1) to prevent the disclosure of its confidential bargaining strategy.  (*Id.* at 19-23.)

A4A argues that ALPA has not demonstrated any burden because it has not described the time or expense that would be involved in complying with the subpoena, and because ALPA has declined A4A's attempts to work with ALPA to limit custodians and search terms in order to minimize the time and expense required to comply with the subpoena.  (Dkt. 78 at 8, 13-15.)  However, the time and expense involved in producing documents are not the only possible forms of burden.  The Eighth Circuit has recognized the compelled disclosure of confidential information as a burden in the discovery context. *E.g.*, *In re Mo. Dep't of Corr.*, 839 F.3d 732, 736-37 (8th Cir. 2016) (considering a subpoena requiring the disclosure of the identity of an anonymous supplier who provided the Missouri Department of Corrections with the pentobarbital used in lethal injections, and concluding that the harm to the Department, which would no longer be able to source pentobarbital from this supplier if its identity was disclosed, outweighed the litigants' need for the information, and that "disclosure would represent an undue burden on MDOC"); *see also Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production.  But there are other cognizable burdens as well.  For example, a subpoena may impose a burden by invading privacy or confidentiality interests.").

As an initial matter, it is clear that the information sought in Request No. 8 is confidential.  To establish that information is confidential, the party resisting discovery

must show that "there were reasonable efforts to keep that information secret." *Kia Motors Am., Inc. v. Autoworks Distrib.*, No. CV 06-156 (DWF/JJG), 2007 WL 9412450, at \*4 (D. Minn. July 3, 2007).  ALPA has made this showing, and A4A concedes that "ALPA is the only source for its internal documents and communications regarding sick time, attendance, and collective bargaining planning and strategy."  (Dkt. 78 at 23.)

ALPA cites several cases in which courts have found discovery that would invade the confidentiality of unions' internal collective bargaining strategy to impose an undue burden.  (Dkt. 85 at 19-21.)  In *Titan International, Inc. v. Becker*, the plaintiff employer brought suit against several labor unions and their members for alleged violations of the Racketeer Influenced and Corrupt Organizations Act.  Slip Op. at \*1, *Titan Int'l, Inc. v. Becker*, No. 00-cv-3257, (C.D. Ill. Nov. 26, 2002).  The employer brought a motion to compel seeking internal union documents including meeting minutes and strike plans, which defendants had withheld based on an asserted "collective bargaining strategy privilege."  *Id.* at \*15-16.  The court concluded that, while the documents at issue were not privileged, they were confidential such that they must be protected from disclosure pursuant to Fed. R. Civ. P. 26(c)(7).[4]  *Id.* at \*16-17.  In reaching this conclusion, the court reasoned that the parties anticipated negotiating future labor agreements, and that disclosure of confidential collective bargaining strategy could jeopardize future negotiations.  *Id.* at \*20.  Because there was an ongoing relationship between the parties, the court concluded that it was "important that the parties remain assured that negotiation

---

[4]     This Rule was later renumbered to 26(c)(1)(G).

history be kept confidential to protect the ability to discuss similar issues freely in the future." *Id.*

Similarly, in *Kerns v. Caterpillar, Inc.*, a class of retirees and surviving spouses brought an action against Caterpillar, Inc. alleging that Caterpillar had breached an obligation arising out of a collective bargaining agreement. No. 3:06-cv-1113, 2008 WL 351233, at *1 (M.D. Tenn. Feb. 7, 2008). Caterpillar served subpoenas on the unions that had negotiated the collective bargaining agreements seeking, among other things, "materials reflecting internal union strategies regarding the UAW's collective bargaining negotiations and contract administration matters with Caterpillar." *Id.* The court concluded that even to the extent that such information was relevant, the unions' undisclosed bargaining strategies were confidential and must be protected from disclosure. *Id.* at *3. In reaching this conclusion, the court noted that "the facts show that the parties here in their ongoing collective bargaining relationship revisit and renegotiate the same issues again and again" and explained that "the UAW's internal strategy materials should be protected from disclosure under Rule 26(c)(1)(G) to maintain the Union's ability to represent employees in future negotiations with Caterpillar." *Id.* at *4.

For its part, A4A cites cases from around the country declining to establish a privilege for labor-relations communications and allowing discovery of union materials. (Dkt. 78 at 25-27.). While ALPA's original objection to Request No. 8 did include an objection on the basis of a labor-relations privilege, among other objections, ALPA's request for a protective order in response to the Motion is based on Rule 26(c)(1), rather

than on a claim of privilege.  (Dkt. 85 at 22.)  Accordingly, the Court expresses no opinion on the existence of a labor-relations privilege.  Still, the Court has considered the cases that A4A has cited on this topic and found them to be distinguishable from this case.

In *Degrandis v. Children's Hospital Boston*, a court in the District of Massachusetts permitted third-party discovery from a union of documents concerning an individual union member, who was the plaintiff in the suit.  203 F. Supp. 3d 193, 195 (D. Mass. 2016).  In that case, the discovery sought did not include the union's bargaining strategy, and it was the plaintiff, not the union, that opposed the discovery.  *Id.*; *see also id.* at 198 ("The Hospital questions whether Plaintiff has standing to object to the subpoena, since the union seemingly (and in the court's view, surprisingly), does not object to producing the materials sought by the Hospital.").  The plaintiff did not raise the burden to the union, instead urging the court to adopt a labor-relations privilege and also relying on the attorney-client privilege and work product protection.  *Id.* at 195-96.

Likewise in *Gray v. Paramount Global*, the subpoena sought documents related to an individual union member's request for writing credit, rather than the union's bargaining strategy.  No. 25-CV-3484 (JSR), 2025 WL 2639902, at *1 (S.D.N.Y. Sept. 15, 2025).  Further, the union did not object on the basis of burden, and the court only considered issues relating to privilege.  *Id.* at *1-4.

*International Brotherhood of Teamsters v. Frontier Airlines, Inc.* is also inapposite because the party seeking discovery in that case (the plaintiff union) was the exclusive bargaining representative of the pilots at issue, while the third party from which the

plaintiff union sought discovery was the former bargaining representative for those pilots. No. 11-CV-02007-MSK-KLM, 2012 WL 1801979, *1-3 (D. Colo. May 16, 2012). In that case, the court declined to apply a labor-relations evidentiary privilege (also referred to as an "internal union privilege") and, when considering whether the information should be protected as confidential, concluded that an attorneys' eyes only designation could alleviate confidentiality concerns. *Id.* at *5-6.

Finally, in *Chicago Bridge & Iron Co., N.V. v. Fairbanks Joint Crafts Council, AFL-CIO*, a suit involving the interpretation of a collective bargaining agreement, a union withheld materials from its initial disclosures on the basis of a labor-relations privilege. No. 3:18-CV-00100 JWS, 2019 WL 2579627, at *1 (D. Alaska June 23, 2019). However, the union did not make any argument based on Rule 26(c). *Id.* ("Nor did [the union] assert that it is withholding union communications and notes related to contract negotiations based on Rule 26(c) or attorney-client privilege.").

Having considered the cases relied on by A4A and ALPA, the Court finds the cases cited by ALPA to be more persuasive and apposite to the present case. Like the unions in *Titan* and *Kerns*, ALPA is engaged in an ongoing collective bargaining relationship with the airlines—including Delta—for which A4A advocates. ALPA asserts, and A4A does not contest, that "from their first collective bargaining agreement dated July 11, 1940, through the current [Pilot Work Agreement], ALPA and Delta have continuously bargained over sick leave, and they will likely do so again when negotiations over amendments to the PWA commence in spring 2026." (Dkt. 85 at 21.)

At the hearing, counsel for A4A suggested that *Kerns* is distinguishable because the court in that case concluded that the union's confidential bargaining strategy was not probative of the meaning of the written agreement between the parties, which was the subject of the suit.  (Dkt. 89 at 19:10-18.)  However, the *Kerns* court went on to state: "To the extent that any information regarding the UAW's confidential bargaining strategy and priorities *is* relevant to the claims and defenses in this case, the court agrees with the UAW that such information is confidential and must be protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(7)."  *Kerns*, 2008 WL 351233, at *3.  While the relationship between the material sought and the claims and defenses at issue in *Kerns* differs from the present case, the Court finds that *Kerns* is apposite and persuasive with respect to the burden that the disclosure of confidential bargaining strategy imposes on a union.  The Court concludes that requiring ALPA to disclose its confidential bargaining strategy on topics for which bargaining is ongoing would greatly burden ALPA by impairing its ability to successfully negotiate on these topics in the future.

A4A suggests that the harm caused by the disclosure of ALPA's confidential bargaining strategy could be mitigated by designating those documents "Attorneys' Eyes Only."  (Dkt. 78 at 16-17.)  In response, ALPA pointed out that "one of the firms representing A4A in this action, O'Melveny & Myers, is longtime counsel to Delta in matters adverse to ALPA, including several recent and pending arbitrations."  (Dkt. 85 at 21 n.8.)  The Court has carefully considered whether an Attorneys' Eyes Only designation or additional limitations on who could see information responsive to Request

No. 8 could sufficiently alleviate the burden on ALPA if the Court granted the Motion.

But as the Court stated at the hearing:

> [F]undamentally, some of those discussions, if they do exist and they are as probative as A4A thinks, will obviously come out in filings with the Court because you'll be using them to support your argument that your claim should go forward; right? If you can't use those documents, then they're not going to – they're not going to be very useful.

(Dkt. 89 at 22:7-12.) In other words, an Attorneys' Eyes Only designation may protect information from disclosure during *discovery*, but the Court has doubts over whether such a designation sufficiently addresses ALPA's concerns about having its confidential bargaining strategy disclosed and the resulting burden on ALPA as this lawsuit proceeds.

This burden implicates several aspects of Rules 26 and 45, insofar as the Court must weigh this burden against the likely benefit of the information sought by Request No. 8 and its importance in resolving the issues in this case, and must also consider whether responding to Request No. 8 imposes an undue burden on ALPA in violation of Rule 26(c)(1) and 45(d)(1). *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7 ("Under Rule 45(d)(1), even if the subpoena seeks relevant information, discovery is not permitted where it imposes an undue burden on the subpoenaed person, considering the same factors as those relied on

14

for proportionality in Rule 26(b)"); Fed. R. Civ. P. 26(c)(1)(A), (D), and (G).  "Concern

for the burden on a non-party subject to a subpoena carries special weight when

balancing competing needs."  *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7 (D.

Minn. Mar. 31, 2022).

Beginning with relevance, A4A argues that these documents are highly relevant

because,

> if ALPA's internal communications show that ALPA was unable or
> unwilling to bargain for aspects of the Law's benefits because ALPA
> believed that Delta would reject it, or because ALPA knew it would have to
> give up something too great in return to receive such benefits, that would be
> squarely relevant to A4A's allegation that the Law is providing benefits
> "which the unions have been unable or unwilling to achieve through the
> collective bargaining process."

(Dkt. 78 at 18 (citing Dkt. 1 ¶ 4).)  While ALPA's internal communications may be

probative to this question, it does not appear to the Court that they would be significantly

more probative than the information already available to A4A through its member Delta.

ALPA and Delta have an extensive history of negotiations that dates back to 1940.  (*See*

Dkt. 85-5 ¶ 4.)  Delta knows about all offers that ALPA has made, all offers Delta has

made to ALPA, whether such offers were accepted or rejected, and what Delta was

willing to accept.  This evidence is highly probative as to what ALPA has been able to

achieve through bargaining, and what tradeoffs ALPA was willing to accept with respect

to relating to sick leave, time off, attendance, reliability, or availability of airline

employees.

According to A4A, "if there are any communications suggesting that ALPA

changed its negotiation strategies because of the Law or other similar paid sick leave

15

laws, that too would directly support A4A's allegation that the Law interferes with the RLA-governed collective bargaining process." (Dkt. 78 at 19.)  At the hearing, counsel for A4A explained the type of information that A4A sought on this topic, proposing the following as a hypothetical ALPA-internal strategy discussion:

> Okay, this is how we're going to approach paid sick, and we're going to ask for this and not that because we can get -- we can get this through the law. Or, Let's agree to this, it might be bad for now, and we can get something bigger in return from Delta because this law is going to come down the pike and we won't have to live with it for long.

(Dkt. 89 at 28:12-18.)

This example highlights the burden imposed on ALPA by responding to Request No. 8 because it shows how the sought-after internal discussions and communications encompass not just what ALPA was unable or unwilling to bargain for, but also what ALPA intends to bargain for (and how) in future negotiations.  And, as ALPA points out, such negotiations are scheduled to begin in Spring 2026.  (Dkt. 85 at 21.)

In sum, the Court finds that evidence of how negotiations between ALPA and A4A's member airlines (including Delta) relating to sick leave, time off, attendance, reliability, or availability of airline employees have *actually* proceeded in the past is important to resolving whether the Minnesota law gives employees benefits that they had been either unable or unwilling to bargain for, as is evidence from A4A's member airlines (including Delta) about what they were and were not willing to agree to during such negotiations.  The Court further finds that internal discussions and communications of the type sought by Request No. 8 are less important and less probative as to resolving that issue.  Moreover, the Court finds that the burden imposed on ALPA by producing

16

"All DOCUMENTS and COMMUNICATIONS CONCERNING any proposals, notes, drafts, discussions, or other documents presented in collective bargaining negotiations between Delta Air Lines, Inc. . . . and ALPA . . . relating to SICK LEAVE, time off, attendance, reliability, or availability of AIRLINE employees, and any DOCUMENTS or COMMUNICATIONS memorializing, referencing, or in any way concerning such DOCUMENTS or COMMUNICATIONS" for an approximately eight-year time span up to "the present" imposes undue burden on ALPA by requiring it to disclose its confidential bargaining strategy to A4A and its lawyers, some of whom are "longtime counsel to Delta in matters adverse to ALPA."  The Court is not persuaded that the broad swath of internal documents and communications sought by Request No. 8 are as important to resolving the RLA preemption issue as AFA suggests.

For these reasons, the Court finds that the information sought by Request No. 8 constitutes confidential information that justifies a protective order under Rule 26(c)(1)(A), (D), and (G), to protect ALPA from the undue burden and harm that would result to ALPA if the Court granted the Motion and required disclosure if ALPA's confidential internal bargaining strategies and related discussions.  In making this decision, the Court "is mindful of the need to give special weight in evaluating the balance of competing needs where discovery is sought from non-parties."  *In re Plowiecki*, No. CV 21-23 (JRT/BRT), 2021 WL 4973762, at *6 (D. Minn. Oct. 26, 2021) (citation modified).  The Court is not persuaded by A4A's argument that "ALPA is not a typical disinterested non-party for whom the court should afford 'special weight' to burden" because "ALPA's relation to the substance of the lawsuit is of its own making."

17

(Dkt. 78 at 24-25.) The fact that ALPA supported the Minnesota law at issue in this case does not alter ALPA's status as a third party, and the Court finds the cases cited by A4A to support this argument distinguishable.[5] Accordingly, the Court denies the Motion to Compel and, by this Order, grants ALPA's request for a protective order pursuant to Rules 37(a)(5)(B) and 26(c)(1)(A), (D), and (G) precluding discovery into the information sought by Request No. 8.

## IV.    ORDER

For all these reasons, and based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1.    Plaintiff Air Transport Association of America, Inc. d/b/a Airlines for America's Motion to Compel the Air Line Pilots Association, International's Production of Documents (Dkt. 77) is **DENIED**.

2.    Air Line Pilots Association, International's request for a protective order (Dkt. 85) pursuant to Federal Rules of Civil Procedure 37(a)(5)(B) and 26(c)(1)(A), (D), and (G) is **GRANTED** insofar as Air Line Pilots Association, International need not reveal information responsive to Request No. 8 in the subpoena served by Plaintiff Air Transport Association of America, Inc. d/b/a Airlines for America on the Air Line Pilots

---

[5]    In *Composition Roofers Union Loc. 30 Welfare Tr. Fund v. Graveley Roofing Enters., Inc.*, the third party was the president of the defendant. 160 F.R.D. 70, 71 (E.D. Pa. 1995). In *Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.*, the third party was "a corporation which is distinct from, but shares close ownership ties with, the plaintiff." No. 2:18-CV-0345, 2020 WL 922918, at *1 (W.D. Pa. Feb. 26, 2020). There is no similar relationship here between the Commissioner and ALPA, and the Court declines to find that an entity's decision to lobby for (or against) a law strips that entity of third party protections in a civil action challenging that law.

Association, International and Plaintiff Air Transport Association of America, Inc. d/b/a

Airlines for America is prohibited from seeking such discovery.


Dated: April 10, 2026                                *s/Elizabeth Cowan Wright*
                                                     ELIZABETH COWAN WRIGHT
                                                     United States Magistrate Judge