UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AIR TRANSPORT ASSOCIATION OF AMERICA, INC. d/b/a AIRLINES FOR AMERICA,

Plaintiff,

v.

NICOLE BLISSENBACH, in her official capacity as Commissioner of the Department of Labor and Industry,

Defendant.

Case No. 24-cv-4657 (JWB/ECW)

**AIRLINES FOR AMERICA'S APPEAL FROM THE APRIL 10, 2026 ORDER DENYING A4A'S MOTION TO COMPEL ALPA'S PRODUCTION OF DOCUMENTS, AND GRANTING ALPA A PROTECTIVE ORDER**

To support its claim that the Railway Labor Act (the "RLA") preempts the Minnesota Earned Sick and Safe Time Law (the "Minnesota Law"), Airlines for America ("A4A") served a subpoena on the Air Line Pilots Association ("ALPA"), the union representing pilots for Delta Air Lines ("Delta"), including hundreds of Delta pilots based in Minnesota, that successfully lobbied for the Minnesota Law to cover pilots after an earlier version of the law excluded pilots from coverage. (*See* Compl. ¶¶ 46-49.) The subpoena included a request for documents that would show how ALPA changed its negotiating strategy as it relates to sick leave because of the Minnesota Law, including by seeking sick leave benefits through legislation rather than collective bargaining ("Request No. 8"). ALPA refused to even look for the documents, so on November 24, 2025, A4A filed a motion to compel ALPA to produce them. On April 10, 2026, Magistrate Judge Cowan Wright denied A4A's motion. (ECF No. 97 (the "Order").)

The Order correctly found that documents responsive to Request No. 8 are relevant to A4A's RLA-preemption claim. However, the Order held -- sight unseen -- that all responsive documents would be so confidential that even an Attorneys' Eyes Only designation could not adequately protect ALPA's confidentiality interests. A4A respectfully submits that the Magistrate Judge's rejection of Attorneys' Eyes Only designations was contrary to law and clearly erroneous. As this Court routinely recognizes, Attorneys' Eyes Only designations adequately protect confidential information from disclosure, both in discovery and later proceedings. And, as explained below, there were numerous alternatives that the Magistrate Judge could have implemented to balance A4A's need for relevant documents with ALPA's confidentiality concerns.

The Order completely exempts from discovery relevant information on ALPA's bargaining process solely because of its alleged confidentiality. It thus effectively creates a labor-relations privilege that no federal court recognizes. It also interferes with A4A's ability to prove its RLA-preemption claim, which this Court recognized in denying Defendant's motion to dismiss would entail discovery on whether the Minnesota Law "disrupts the bargaining process." (ECF No. 55 at 34:23-24.) Not even the attorney-client privilege or attorney work product doctrine provides that kind of blanket protection. There is no basis for such an extreme result, and A4A respectfully requests that the Court set aside the Order and require ALPA to produce all documents responsive to Request No. 8.

## BACKGROUND ON THE SUBPOENA AND THE ORDER

### A. A4A Subpoenaed ALPA Seeking Information Relevant To Its RLA-Preemption Claim

In its Complaint, A4A alleges that the Minnesota Law creates an inequitable bargaining process, and is therefore preempted by the RLA, by mandating through legislation sick leave terms that the airlines' unions have been unable or unwilling to achieve during collective bargaining agreement ("CBA") negotiations.[1] (*See, e.g.*, Compl. ¶¶ 4, 83-85.) In denying Defendant's motion to dismiss, the Court directed that discovery for this claim should focus on whether the Minnesota Law "displaces or interferes with collective bargaining under the RLA." (ECF No. 55 at 35:4-35:12.)

Following the Court's directive, A4A subpoenaed ALPA. Request No. 8 sought documents relating to ALPA's CBA strategies on behalf of Delta's pilots as it relates to sick leave, such as documents reflecting (i) how ALPA prioritized sick leave provisions in CBA negotiations and (ii) how the Minnesota Law (or other paid sick leave laws) impacted the negotiation process. Documents from ALPA showing, for example, that ALPA altered its negotiating strategy because of the Minnesota Law would support A4A's claim that the Minnesota Law "displaces or interferes with collective bargaining under the RLA," and is thus preempted. (*Id.*) ALPA refused to search for responsive documents on the basis that it was "unduly burdensome to the extent that it seeks internal bargaining strategies not

[1] The Complaint also asserts that the Minnesota Law is preempted by the Airline Deregulation Act, but that claim is not germane to this appeal.

shared with Delta, which are subject to the labor-relations privilege, the production of which would cause irreparable injury to ALPA." (ALPA Objection, ECF No. 79-5 at 5.)

To be clear, A4A is the only Plaintiff in this action; A4A does not employ any airline employees, and has never negotiated a collective bargaining agreement with ALPA. But, in response to ALPA's confidentiality concerns, A4A offered that ALPA could designate responsive documents as Attorneys' Eyes Only under the protective order in this action, which would prevent the documents from being "revealed to another party or one of A4A's member airlines." (ECF No. 67 (the "Protective Order").) ALPA still refused, and A4A filed a motion to compel. (ECF No. 77.)

### B. The Order Found That A4A Sought Relevant Documents, But Denied A4A Access To The Documents After Finding That An Attorneys' Eyes Only Designation Would Not Protect ALPA's Confidentiality Interests

***The Order correctly confirmed that Request No. 8 sought relevant documents.*** (*See* Order at 7, 15-16). The Order states that "whether the Minnesota law gives employees benefits that they had been either unable or unwilling to bargain for is relevant to the RLA preemption claim in this case" and that although A4A "already possesses significant information about what ALPA was willing and able to bargain for in its negotiations with Delta," "there may be additional relevant information in ALPA's internal documents and communications." (Order at 7 (emphasis added).)[2]

[2] While A4A may be able to obtain (from Delta) information about bargaining proposals actually made and accepted between ALPA and Delta, A4A cannot obtain (because Delta does not have) documents showing ALPA's internal discussions regarding whether ALPA was unwilling to bargain for certain sick leave benefits because of the

***The Order correctly acknowledged that ALPA's only burden argument is based on the confidentiality of the documents sought.*** The Order acknowledged that ALPA's claim of undue burden was not the "time and expense involved in producing documents." (Order at 8.) Instead, ALPA's only asserted burden was that compliance with Request No. 8 would undermine ALPA's confidentiality interest regarding its internal collective bargaining strategy. (*Id.*)

***The Order found that requiring ALPA to produce confidential documents, standing alone, constitutes an undue burden.*** The Order next found that "the compelled disclosure of confidential information" was a "burden in the discovery context" and that "it is clear that the information sought in Request No. 8 is confidential." (Order at 8.) The Order concluded that "requiring ALPA to disclose its confidential bargaining strategy on topics for which bargaining is ongoing would greatly burden ALPA by impairing its ability to successfully negotiate on these topics in the future." (*Id.* at 13.)

In finding that the "compelled disclosure of confidential information [is] a burden in the discovery context," the Magistrate Judge cited two cases -- neither of which was in the parties' briefing or is analogous to the instant situation -- involving death-row inmates' claims under the Eighth Amendment. (Order at 8.) For example, in *In re Missouri Department of Corrections*, death-row inmates subpoenaed the Missouri Department of Corrections ("MDOC") seeking the identity of MDOC's anonymous pentobarbital supplier.

---

Minnesota Law, including because ALPA decided to get those benefits from the legislature instead of Delta.

839 F.3d 732, 736-37 (8th Cir. 2016) (per curiam). The Eighth Circuit held that the district court correctly quashed the subpoena because the identity of the supplier had "no relevance" to the inmates' claim. *Id.* The supplier also clarified that it would "cease to provide pentobarbital to anyone…once its identity is disclosed," even under a protective order. *Id.* The Eighth Circuit explained that enforcing the subpoena would "certainly harm" the state's interest in "exercising its sovereign power to enforce [the] law." *Id.*[3] In contrast, the Magistrate Judge here recognized that the documents A4A seeks are relevant, and ALPA has not articulated, let alone substantiated, any comparable harm from producing its negotiation strategies with Attorneys' Eyes Only designations.

***The Order (incorrectly) concluded that Attorneys' Eyes Only designations would not sufficiently protect ALPA's confidentiality concerns.*** The Order then addressed A4A's argument that ALPA could produce responsive documents Attorneys' Eyes Only. The Magistrate Judge concluded -- without having seen responsive documents *in camera* or otherwise -- that she "has doubts over whether such a designation sufficiently addresses ALPA's concerns about having its confidential bargaining strategy disclosed and the resulting burden on ALPA as this lawsuit proceeds" because "an Attorney's Eyes' Only designation may protect information from disclosure during *discovery*," but not in subsequent court proceedings as, according to the Magistrate Judge, the documents "will obviously come out in filings with the Court." (Order at 14.) The Order nowhere discussed the Protective Order's specific terms, including its extensive protections for Attorneys' Eyes

[3] The second case cited in the Order is similar to, and cites, the *MDOC* case. *See VA Dep't of Corr. v. Jordan*, 921 F.3d 180, 189, 192 (4th Cir. 2019).

Only designated documents, *e.g.*, sealing them in court filings and providing ALPA notice of any party's intent to use the documents at a hearing or trial so that ALPA can seek further protection. (*See* Protective Order ¶¶ 3(d), 6.) The Order also suggests that one of the reasons an Attorneys' Eyes Only designation would not sufficiently protect ALPA's internal bargaining strategies was that one of A4A's law firms, O'Melveny & Myers, LLP, "is longtime counsel to Delta in matters adverse to ALPA, including several recent and pending arbitrations." (Order at 13 (quoting ECF No. 85 at 17 n.8).) The Order did not address the other two firms representing A4A, neither of whom represented Delta in previous matters adverse to ALPA.

## LEGAL STANDARD

Local Rule 72.2(a)(3)(A) requires that a district judge "consider timely objections" to a magistrate judge's order on a non-dispositive matter "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." An order is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Edeh v. Equifax Info. Servs.*, 295 F.R.D. 219, 223 (D. Minn. 2013) (citation modified). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Sanimax, LLC v. South St. Paul*, 2021 WL 5769309, at *3 (D. Minn. 2021).

# ARGUMENT

## I. THE ORDER IS CONTRARY TO LAW AND CLEARLY ERRONEOUS IN FINDING ATTORNEYS' EYES ONLY DESIGNATIONS INSUFFICIENT TO PROTECT ALPA'S CONFIDENTIALITY INTERESTS

The Magistrate Judge found that ALPA did not have to search for or produce relevant, responsive documents because ALPA's stated interest in maintaining the documents' confidentiality could not be accommodated through Attorneys' Eyes Only designations -- the Magistrate Judge did not find (because ALPA did not claim) any other burden. In this way, the Order prevents A4A from obtaining documents to support its RLA-preemption claim that this Court ordered discovery on, essentially creating a labor-relations privilege that no federal court recognizes and that ALPA did not argue for. The Order also goes against the weight of authority in this and other Circuits by finding that Attorneys' Eyes Only designations would not sufficiently protect ALPA's confidential information. The Order is both contrary to law and clearly erroneous:

***First, the Order is contrary to well-established law in this Circuit and elsewhere confirming that Attorneys' Eyes Only designations adequately protect confidential information.*** In *Sedlock by Sedlock v. Bic Corp.*, the Eighth Circuit rejected the argument that Bic Corp. "will be irreparably harmed by the discovery order because [its] trade secrets will become public knowledge after other plaintiffs' attorneys obtain them." 926 F.2d 757, 759 (8th Cir. 1991). The Eighth Circuit explained:

> The discovery materials Bic designates as trade secrets must be treated confidentially. Dissemination of the discovery is limited to other attorneys and their experts in similar cases against Bic. Other attorneys who seek the discovery must agree to be bound by the protective order's terms before

> access to the discovery is permitted. Thus, none of the protected discovery will become public knowledge under the terms of this order.

*Id.*[4] Following *Sedlock*, courts in this District (and elsewhere) routinely employ Attorneys' Eyes Only designations to protect highly confidential information,[5] including information produced by third parties.[6] Indeed, courts have used Attorneys' Eyes Only designations to protect information far more confidential than ALPA's bargaining documents, including trade secrets.[7] The Order's conclusion that ALPA's documents (which were not reviewed *in camera* or otherwise) are too confidential for Attorneys' Eyes Only protection cannot be squared with the large body of caselaw finding Attorneys' Eyes Only protections sufficient.

---

4 As in *Sedlock*, there is no assertion that counsel for A4A previously violated protective orders or would violate the Protective Order here.

5 *See, e.g.*, *Raines v. Allied Constr. Servs., Inc.*, 2019 WL 3545889, at *4 (D. Minn. 2019) (defendant's "concerns regarding access to sensitive information are adequately addressed by the presence of the umbrella Protective Order already entered in this matter, which provides . . . 'Confidential—Attorneys' Eyes Only'"); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 2014 WL 5835337, at *5-7 (D. Minn. 2014) (similar); *Tri-State Grease & Tallow Co. v. Milk Specialties Co.*, 2012 WL 13029572, at *4 (D. Minn. 2012) (ordering production "guided by the liberal federal principles favoring disclosure, [and] keeping in mind the need to safeguard confidential information transmitted within the discovery process").

6 *See, e.g.*, *FemtoMetrix Inc v. Huang*, 2024 WL 396186, at *9 (N.D. Cal. 2024) (denying third party's motion to quash subpoena, and ordering documents produced Attorneys' Eyes Only); *Fusion Elite All Stars v. Nfinity Athletic LLC*, 2022 WL 1175691, at *4-5 (W.D. Tenn. 2022) (rejecting non-parties' claim that confidentiality through Attorneys' Eyes Only designations would be "illusory and impotent" because Attorneys' Eyes Only designations "have [been] routinely found to be adequate to protect confidential business information").

7 *Superior Edge, Inc. v. Monsanto Co.*, 2014 WL 12756161, at *2 (D. Minn. 2014) (compelling production of software algorithm and source code with Attorneys' Eyes Only designation); *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) (finding that "even a very sensitive trade secret will be sufficiently protected [by Attorneys' Eyes Only designation] and should be produced if relevant").

***Second, the Order is contrary to law and clearly erroneous because it concludes that Attorneys' Eyes Only protections would not sufficiently protect ALPA in future phases of this litigation.*** While the Order found that Attorneys' Eyes Only designations "may protect information from disclosure during *discovery,*" it found that such protections would not extend post-discovery because the information "will obviously come out in filings with the Court because [A4A will] be using them to support [its] argument." (Order at 14.) This finding contradicts the above caselaw and ignores that the Protective Order protects Attorneys' Eyes Only documents in filings and at hearings or trial, including by requiring that: (i) all Attorneys' Eyes Only documents be filed under seal, and (ii) prior to using any Attorneys' Eyes Only documents at a hearing or the bench trial in this action, ALPA must receive notice so that it can seek protection before any courtroom disclosure occurs (*e.g.*, by requesting the courtroom be cleared). (Protective Order ¶ 6(b).) Given these protections, it was contrary to law and clearly erroneous for the Order to conclude that ALPA's Attorneys' Eyes Only designated documents would "obviously come out in filings with the Court" and to express doubts "over whether" the Attorneys' Eyes Only "designation sufficiently addresses ALPA's [confidentiality] concerns." (Order at 14.) In any event, the Magistrate Judge's apparent recognition that documents responsive to Request No. 8 – *e.g.*, showing that ALPA changed its bargaining strategy because of the Minnesota Law -- would be so supportive of A4A's RLA preemption-claim such that A4A would "obviously" use them only further confirms the prejudice to A4A if they are not produced in discovery.

***Third, the Order is contrary to law because it effectively creates a "labor relations" privilege, which no federal court recognizes.*** In written objections and meet-and-confers, ALPA suggested that the documents A4A sought were protected by a "labor relations" privilege. A4A's motion to compel explained that no federal court recognizes such a privilege. (*See* ECF No. 78 at 20-21 (collecting cases, including *Degrandis v. Children's Hosp. Bos.*, 203 F. Supp. 3d 193, 199 (D. Mass. 2016) ("Congress has never acted to establish a labor relations privilege, and no federal court has ever recognized it.")).) In response, ALPA clarified that it was not arguing for a "labor relations" privilege. (*See* Order at 10-11.) While the Order purports to "express[] no opinion on the existence of a labor-relations privilege," Order at 11, it all but creates such a privilege under the auspices of "confidentiality." Put differently: if Attorneys' Eyes Only adequately protects trade secrets, but <u>not</u> labor relations negotiations, that all but creates an absolute "labor relations" privilege. Such a finding is contrary to law and substantially prejudices A4A by excluding from discovery documents related to the bargaining process, despite this Court's prior finding in denying Defendant's motion to dismiss A4A's RLA-preemption claim that discovery on that claim should focus on whether the Minnesota Law "disrupts the bargaining process under the RLA" and "displaces or interferes with collective bargaining under the RLA." (ECF No. 55 at 34:23-24, 35:11-12.)[8]

---

[8] Internal union documents can be produced to employers in disputes between employers and unions over bargaining or their CBAs. *See, e.g.*, *Yellow Corp. v. Int'l Bhd. of Teamsters*, 2025 WL 3089412, at *3 (10th Cir. 2025) (discussing union meeting minutes produced to employer in CBA dispute). Without such documents, it would be difficult to prove or defend claims related to the collective bargaining process.

## II. IT WAS CLEARLY ERRONEOUS FOR THE MAGISTRATE JUDGE TO NOT IMPLEMENT ADDITIONAL PROTECTIVE MECHANISMS IN LIEU OF DENYING ALTOGETHER DISCOVERY OF RELEVANT DOCUMENTS

For the above reasons, the Order is contrary to law and clearly erroneous, and ALPA should be required to produce documents responsive to Request No. 8 with Attorneys' Eyes Only designations. But, even if the Magistrate Judge had concerns about the efficacy of Attorneys' Eyes Only designations, it was clearly erroneous not to implement other protective mechanisms that still allow production of relevant documents to A4A. For example:

***The Order could have limited ALPA's Attorneys' Eyes Only documents to A4A's Skadden and Fredrikson attorneys.*** The Order twice noted that the O'Melveny & Myers law firm represented A4A in this action and Delta in matters adverse to ALPA. To the extent the Magistrate Judge harbored any concerns (although none are warranted), she could have limited ALPA's Attorneys' Eyes Only documents to Skadden and Fredrikson, which have not represented Delta in any labor negotiations or prior matters adverse to ALPA.

***The Order could have required ALPA to log all confidential documents on a confidentiality log.*** No one has even seen the documents responsive to Request No. 8 that ALPA claims are so confidential that not even an Attorneys' Eyes Only designation can protect them. The Order thus creates a blanket exemption from discovery for documents related to ALPA's bargaining strategies for sick leave. Not even privileged or work product documents get that protection: parties and non-parties must still search for and log relevant

documents so the other party can assess the claimed privilege (or seek *in camera* review). *See* Fed. R. Civ. P. 26. Indeed, as A4A's counsel noted at oral argument, the principal case ALPA relies on to argue that it need not produce confidential documents -- *Kerns v. Caterpillar, Inc.* -- still required that the confidential documents be logged. 2008 WL 351233, at *3, *5 (M.D. Tenn. Feb. 7, 2008); ECF No. 89 at 19. At a minimum, ALPA should be required to log any documents responsive to Request No. 8 so that A4A may assess any claimed confidentiality and, potentially, seek *in camera* review to assess their confidentiality or whether A4A has a substantial need for them.

***The Order could have enhanced the Protective Order to make it even more robust.*** Although the Magistrate Judge did not cite the Protective Order at all, given ALPA's stated confidentiality concerns, the Magistrate Judge could have required ALPA to propose additional Attorneys' Eyes Only enhancements to the Protective Order to address its concerns about production of documents responsive to Request No. 8.

***The Order could have limited production to backward-looking documents.*** The Magistrate Judge expressed concern about ALPA disclosing its "confidential bargaining strategy on topics for which bargaining is ongoing." (Order at 13.) Even crediting that concern, the Magistrate Judge could have ordered production of documents related to prior rounds of CBA negotiations to mitigate any stated risk to ongoing bargaining. That approach would have provided A4A relevant discovery to support its RLA-preemption claim while addressing any concerns related to ongoing bargaining.

## CONCLUSION

The Order's finding that ALPA does not have to produce documents -- even with an Attorneys' Eyes Only designation -- that the Magistrate Judge found are relevant simply because of their confidentiality substantially prejudices A4A, and finds no basis in law. A4A respectfully requests that this Court sustain A4A's appeal, set aside the Order, and enter an order compelling ALPA to produce documents responsive to Request No. 8 under an Attorneys' Eyes Only designation.

Dated: April 24, 2026

Respectfully submitted,

/s/ *Alisha Q. Nanda*
James R. Carroll (admitted *pro hac vice*)
Alisha Q. Nanda (admitted *pro hac vice*)
Emily M. Jennings (admitted *pro hac vice*)
Anne E. Rabon (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone: (617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
emily.jennings@skadden.com
anne.rabon@skadden.com

/s/ *Leah C. Janus*
Leah C. Janus (0337365)
Alethea M. Huyser (0389270)
Natasha T. Robinson (0399625)
FREDRIKSON & BYRON P.A.
60 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
ljanus@fredlaw.com
ahuyser@fredlaw.com
nrobinson@fredlaw.com

Chris A. Hollinger (admitted *pro hac vice*)
Molly Edgar (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700
chollinger@omm.com
medgar@omm.com

Michael Rosenblatt (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
mrosenblatt@omm.com

*Counsel for Plaintiff*
*Air Transport Association of America, Inc. d/b/a Airlines for America*